IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EDDIE L. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:11CV508-SRW |
| | ) (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

Plaintiff Eddie L. Carter brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (See Docs. ## 8, 9). Upon review of the record and the arguments of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

Plaintiff has a third grade education. (R. 147). He last worked as a "tree cutter"[1] from 1998 until March 1, 2003, when he stopped working because his employer went out of

---

[1] The vocational expert indicated that plaintiff's work, according to the Dictionary of Occupational Titles, was that of a "chainsaw operator." She testified that it is semi-skilled work at the "heavy" exertional level, and that the skills of power equipment operation plaintiff acquired in that work would not be transferable to lighter work. (R. 55-56).

business. (R. 143-44).[2] On October 22, 2007, when he was fifty-four years old, plaintiff filed Title II and Title XVI applications for benefits, alleging that he became disabled on November 1, 2006, due to "[p]roblems with both feet, back problems, arthritis, [and] high blood pressure."[3] He indicated that his feet swell and he has back pain, and that he cannot stand for longer than 35-40 minutes without experiencing pain. (R. 110-18, 139, 143). Plaintiff's claims were denied at the initial administrative level, and he requested a hearing before an ALJ. (R. 67-88).

The ALJ rendered a decision on March 9, 2010. (R. 17-31). He found that plaintiff has "severe" impairments of "status post fracture of the left ankle and foot, hypertension, osteoarthritis of the left foot, and mild osteoarthritis of the lumbar spine." (R. 19). He concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform the exertional requirements of medium work, subject to additional non-exertional limitations. (R. 20). He determined that plaintiff is unable to perform his past relevant work, but that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (R. 26-28). The

---

[2] In his application, plaintiff stated that he had worked from 1998 through 2003 as a "tree cutter" for a "tree service." (R. 144). In the work history report completed in December 2007, plaintiff indicated that he had worked in three different jobs cutting pine trees for pulp wood: one from 1992 through 1995, the next from 1995 through 1997, and the third from 1997 through 2000. (R. 159-62). Plaintiff's FICA earnings record shows no earnings for the period from 1984 through 1997; it lists earnings from "Raymond Greer" from 1998 through 2003. (R. 129-31).

[3] Plaintiff suffered a lacerated and broken left ankle on November 28, 2006, when a tree fell on his foot. (See Exhibit 1F, R. 206).

2

ALJ concluded that plaintiff has not been under a disability as defined in the Social Security Act from his alleged onset date through the date of the decision. (R. 28). On April 28, 2011, the Appeals Council denied plaintiff's request for review (R. 1-5) and, accordingly, the decision of the ALJ stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff contends that: (1) the ALJ's finding that plaintiff retains the residual functional capacity for medium work is not supported by substantial evidence; (2) the ALJ

3

erred in failing to find plaintiff to be limited to work at the sedentary level of exertion for a period of at least twelve months after his November 1, 2006, injury and, accordingly, entitled to a period of disability under Rule 201.10 of the medical-vocational guidelines ("the grids"); and (3) that the ALJ erred by failing to find him disabled "after the threshold period of twelve months," as "the evidence supports a finding under [Rule 202.02 of] the medical vocational rules at the light level." (Doc. # 12, pp. 1, 5-7, 10-11).

Plaintiff was 53 years old – "closely approaching advanced age" – on his alleged onset date of November 1, 2006. He attained the age of 55 – *i.e.*, "advanced age" – in March of 2008. (See R. 115; ALJ's Finding No. 7; 20 C.F.R. §§ 404.1563 and 416.963; Plaintiff's brief at pp. 7, 11). As plaintiff argues, he would be entitled to a period of disability if he were limited to sedentary work for a period of at least twelve months following the injury to his left ankle. (See Rule 201.10, "Medical-Vocational Guidelines," 20 C.F.R. Pt. 404, Subpt. P, App. 2).[4] Plaintiff points out that – at the end of the twelve-month period following his injury – he was within four months of his fifty-fifth birthday. He further contends that, at that point – because the Commissioner does not apply the age categories mechanically[5] – he was disabled pursuant Rule 202.02, even if he were capable of work at the light exertional level.[6] However, as noted above, the ALJ found the plaintiff to have the RFC to perform "medium"

---

[4] Rule 201.10 directs a finding of "disabled" as to a claimant who is limited to sedentary work, is closely approaching advanced age, has a "limited or less" education, and past work at the skilled or unskilled level but with skills not transferable to sedentary work.

[5] See 20 C.F.R. §§ 404.1563(b), 416.963(b)("We will not apply the age categories mechanically in a borderline situation.").

[6] Rule 202.02 directs a finding of "disabled" as to a claimant who is limited to light work, is of advanced age, has a "limited or less" education, and past work at the skilled or unskilled level but with skills not transferable to light work.

work. (R. 20). If this finding is sustained, plaintiff's arguments related to the grids must fail. (See Table 3 of the Medical-Vocational Guidelines).

Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence because "[i]n finding an RFC for medium work, the ALJ essentially adopted the State Agency RFC (R. 235) but with added postural and environmental restrictions" and that the ALJ's consideration of the assessment of the single decision-maker ("SDM") "pursuant to SSR 96-9p" was misplaced because the SDM is not an acceptable medical source. (Doc. # 12, pp. 8-9). Plaintiff asserts that the only opinion of record that plaintiff could perform medium work was that of "the non[-]M.D. state agency representative." (Id., p. 9). He further argues:

> At the initial State Agency level a medical or psychological consultant directly participates in determining whether a Plaintiff's MDIs could reasonably be expected to produce the alleged symptoms. Significantly, disability determinations at the State Agency level are made by a medical consultant and the disability examiner. The only time that the disability examiner makes the decision without a medical consultant is when there is no medical evidence to examine and the individual refuses to attend a CE (20 CFR 404.1615 c (1) and (2)). This was not the case here.

(Id., pp. 9-10).[7] Plaintiff notes that the ALJ's duty to develop the record is heightened where, as here, the claimant is not represented at the administrative hearing; he contends that the

---

[7] It is not clear whether plaintiff contends that the adjudicative procedure at the DDS level was in violation of the Commissioner's regulations because the initial decision was not made by "a medical consultant and the disability examiner." (See Doc. # 12, pp. 9-10). To the extent that he does, he is mistaken. In the single decision-maker model used by the DDS in Alabama, the SDM makes the decision after consultation, as appropriate, with a medical or psychological consultant. However, the consultant is not required to sign the transmittal form. See 20 C.F.R. § 404.906(b)(2); see also 71 Fed. Reg. 45890-01 (Aug. 10, 2006)(extending testing of modification to disability adjudication process – including the SDM model – in several states, including Alabama, for up to three years).

ALJ failed in his duty to develop the record because the ALJ did not "obtain an opinion by a qualified medical practitioner in a format compliant with SSR 96-8p which requires a specific function by function analysis." (Id., p. 10).

The latter contention is belied by the record. Whether or not he was bound to do so, the ALJ requested and received a medical source opinion regarding plaintiff's functional limitations. Plaintiff's claims were denied initially by SDM Powell on January 23, 2008 (see R. 63-64, 67-78). The evidence then of record included a January 10, 2008, consultative examination report – but no physical capacities assessment – from Dr. Ivan Slavich. (See R. 67 and Exhibit 6F at R. 232-34). On February 21, 2008, plaintiff appealed the SDM's denial by requesting a hearing before an ALJ. (R. 79-87). Seventeen months later, Dr. Slavich performed another consultative examination of the plaintiff; this time, the authorization form sent to Dr. Slavich listed, in addition to a medical examination, a "Medical Source Opinion (Physical) ALJ Only." (R. 246; compare with R. 232). On July 23, 2009, pursuant to the authorization form sent to him by the DDS on July 7, 2009, Dr. Slavich examined the plaintiff; on that date, Dr. Slavich also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (Exhibit 9F, R. 246-53). Thus, it appears that – contrary to the plaintiff's argument – the ALJ further developed the record on appeal by obtaining a medical source opinion regarding plaintiff's functional limitations.[8]

---

[8] While plaintiff asserts that the ALJ failed to develop the record by obtaining a function-by-function assessment from a medical source, plaintiff describes the second consultative examination performed by Dr. Slavich on July 23, 2009. (See Doc. # 12, p. 8)("The record is silent until the ALJ ordered a second CE by Dr. Slavich with X-rays which was performed on July 23, 2009."). Dr. Slavich's physical RFC form is appended to his narrative report of the physical examination and is included within the same exhibit. (See

After examining the plaintiff on July 23, 2009, Dr. Slavich concluded:

> Based on my medical findings, from a physical point of view, objectively the patient does not have any significant impairments to preclude him from doing any work related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling.

(R. 248). In his "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," Dr. Slavich indicated that plaintiff can: lift 51-100 pounds continuously ("more than two-thirds of the time") and carry 21-100 pounds frequently; sit, stand and walk for eight hours each, without interruption, in an eight hour work day; reach, handle, finger, feel and push/pull continuously with both hands; continuously operate foot controls with both feet; and climb, balance, stoop, kneel, crouch, and crawl continuously. (R. 249-53). Dr. Slavich diagnosed a "[h]istory of lumbar strain" and further observed that "x-rays show mild osteoarthritis of the lumbar spine." (R. 248). Plaintiff's contention that the ALJ violated his duty to develop the record by failing to obtain a function-by-function assessment from a medical source is without merit.

As noted previously, plaintiff further alleges error in the ALJ's consideration of the physical RFC form completed by the state agency SDM. In assessing the opinion evidence, the ALJ writes:

> Pursuant to Social Security Ruling 96-6p, I have also considered the opinions of [the] non-examining State Agency single decision-maker. It is noted that the State Agency single decision-maker did not have the benefit of the most recent medical source statements, current medical records, or the hearing testimony. In any event, her report essentially supports the conclusions stated herein. To

---

Exhibit 9F, pp. 4-8). The ALJ described Dr. Slavich's opinion, in function-by-function terms, in his summary of the evidence. (See R. 24, first complete paragraph).

7

>   the degree that the conclusions of the State Agency single decision-maker differ from those of the undersigned, her report is accorded little weight, as the opinion was based on only part of the current evidence of record. Further, pursuant to Eleventh Circuit case law and regulations, I give greater weight to the treating and examining physician[s'] reports as summarized herein.

(R. 26). As plaintiff argues, the single decision-maker is not an acceptable medical source and, accordingly, the ALJ erred in considering the SDM opinion "[p]ursuant to Social Security Ruling 96-6p[.]" This ruling sets forth the Commissioner's policy regarding the ALJ's consideration of findings of fact by State agency medical and psychological consultants and other program physicians and psychologists. (See SSR 96-6p). The SDM's opinion (see Exhibit 7F, R. 235-42) is not entitled to any weight at the ALJ hearing level. See Siverio v. Commissioner of Social Security, 2012 WL 573588, *2-3 (11th Cir. Feb. 23, 2012)(unpublished opinion)("'SDM-completed forms are not opinion evidence at the appeals level.'" (quoting POMS § DI 24510.050); finding ALJ's reliance on SDM's RFC assessment not to be harmless where the ALJ's opinion "showed that the ALJ labored under the mistaken belief that Martin's RFC assessment had been authored by a physician" and where he gave it "significant weight").

In the present case, the ALJ acknowledges that the state agency RFC assessment is that of a single decision-maker. (R. 23)(referring to RFC assessment by "Ms. Powell"). Despite his citation to SSR 96-6p, it does not appear that the ALJ believes the SDM to be a physician. (Id.; see also R. 26). While the ALJ indicates that the SDM's assessment "essentially supported" his findings, he observes that the SDM rendered her January 2008 opinion without the benefit of later medical evidence. He gives her assessment "little weight"

to the extent that it differs from his own conclusions. Additionally, unlike the ALJ in Siverio, the ALJ assigns "greater weight to the treating and examining physician[s'] reports" than to the SDM's assessment. (Id.).

The ALJ's consideration of the SDM's opinion is, in the instant case, harmless error. Plaintiff argues that "[i]n finding an RFC for medium work, the ALJ essentially adopted the State Agency RFC (R. 235) but with added postural and environmental restrictions including occasional push/pulling and leg controls with the left foot, occasional stair climbing and balancing, occasional driving and exposure to temperature extremes." (Doc. # 12, p. 8). However, the ALJ's express reasoning does not suggest that he "essentially adopted the State Agency RFC." The ALJ writes: "I give substantial weight to Dr. Slavich's assessment that reflects the claimant can perform *at least a range of medium work activity*." (R. 26)(emphasis added).[9] The limitations expressed by the non-medical SDM are more restrictive than those assessed by Dr. Slavich. (Compare Exhibits 7F and 9F). Thus, even if the ALJ had credited the SDM's non-medical opinion over Dr. Slavich's medical opinion – which he expressly states that he did not do – any such error would have been in plaintiff's favor. Additionally, as to plaintiff's left foot injury, Dr. Patrick Martin – plaintiff's treating orthopedist – released plaintiff to work "without restrictions" on March 6, 2007, just over "three months status post conservative treatment of a left fourth and fifth metatarsal fracture

---

[9] Plaintiff argues that "Dr. Slavich did not find that Plaintiff could perform medium work" and that "[t]he ALJ's attempt to impute a medium RFC assessment to the consultative physician in order to give weight to a medical opinion is not persuasive." (Doc. # 12, p. 9). As the ALJ observed, Dr. Slavich's RFC assessment allows for "*at least* a range of medium work activity." (R. 26 (emphasis added); see R. 249-53; 20 C.F.R. §§ 404.1567(c)(defining "medium" exertional level), 416.967(c)(same)).

and calcaneal base fracture." (R. 210). On that date, plaintiff told Dr. Martin that "he no longer takes any pain medications," "is weight bearing as tolerated in the cast shoe," and is "already weaning himself into a normal shoe." (Id.). Dr. Martin wrote:

> We will have Mr. Carter wean himself from the cast shoe to a normal shoe over the next several weeks. I recommended that he seek employment now. Now that he has no pain with prolonged standing or weight bearing I feel that he can seek gainful employment without restrictions.

(R. 220).[10] There is no medical source opinion of record indicating – or even suggesting – that plaintiff is more limited than set forth in the SDM's physical capacities assessment, except for the brief period from his November 28, 2006, accident until early March 2007, when plaintiff's treating orthopedist released him to seek employment "without restriction."[11] Plaintiff acknowledges that the ALJ gave the SDM opinion "little weight," but complains that he did so for the wrong reason – *i.e.,* "as it was based on only part of the medical record and he was giving greater weight to the examining physician[s'] reports." (Doc. # 12, p. 9). While the SDM's assessment is not a medical opinion entitled to any weight, the reasoning

---

[10] Dr. Martin evaluated plaintiff's left ankle and foot injury five times in the three months from December 1, 2006 to March 6, 2007. (Exhibit 3F, R. 220-25).

[11] Plaintiff points to the July 2009 left foot x-rays showing "old fractures of the fourth and fifth metatarsals with slight residual deformity" (R. 244) and his "spinal impairment" shown by x-ray in January 2008 (R.230) in arguing that the ALJ erred by failing to "bifurcate his findings" and conclude that plaintiff was "capable of no greater than the full range of sedentary unskilled work through the date of the consultative examination (CE) when he was within two months of his 55th birthday" and, thus, disabled pursuant to the grids. (Doc. # 12, pp. 6-7). However, Dr. Slavich later assessed only "mild osteoarthritis of the lumbar spine" based on plaintiff's lumbar spine x-rays, and his physical examination findings in both January 2008 and July 2009 were unremarkable. (Exhibits 6F, 9F). As the Commissioner suggests, the existence of an impairment lasting for more than twelve months is not itself sufficient to support a finding of disability under the Social Security Act; it is the duration of the resulting functional limitations that matters. (See Doc. # 13 at pp. 10-11)(citing 42 U.S.C. § 423(d)(1)(A) and Barnhart v. Walton, 535 U.S. 212, 222 (2002)). The ALJ did not err by failing to "bifurcate" his findings to account for plaintiff's more restrictive limitations during his brief period of recuperation from his injury.

set forth in the remainder of the ALJ's opinion and the medical evidence of record demonstrate that the ALJ's error in considering it is harmless. The ALJ's conclusion that plaintiff retains the residual functional capacity for work at the medium level of exertion is supported by substantial evidence of record. Plaintiff's remaining arguments regarding his entitlement to a finding of disability under "the grids" are without merit.[12]

## CONCLUSION

For the foregoing reasons, and upon review of the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED. A separate judgment will be entered.

DONE, this 13th day of June, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[12] While plaintiff does not present the ALJ's finding that plaintiff has a "limited" education, as opposed to a "marginal" one, as reversal error, he argues that the finding is not supported by the record. (Doc. # 12, p. 4 (statement of facts); see R. 147 (plaintiff has a third-grade education) and 20 C.F.R. §§ 404.1564(b)(2)("We generally consider that formal schooling at a 6th grade level or less is a marginal education."), 416.964(b)(2)(same)). The court concludes that this error, too, is harmless. The ALJ's hypothetical question to the vocational expert did not describe the hypothetical individual's education as "limited" but, instead, as "a third grade education[.]" (R. 57). Accordingly, the ALJ's later finding of a "limited" education does not deprive his decision of substantial evidentiary support. Even the grid rules cited by plaintiff apply where the claimant's education is "[l]imited or less." (See Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, Rules 201.10 and 202.02).